```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK            FOR ONLINE PUBLICATION ONLY
---------------------------------------------------------------- X
SHLOMO YASHAR,                           :
                                         :
                          Petitioner,    :
                                         :         MEMORANDUM
          - against -                    :         AND ORDER
                                         :
UNITED STATES OF AMERICA,                :         05 CV 29 (JG)
                                         :
                          Respondent.    :
---------------------------------------------------------------- X
```

A P P E A R A N C E S :

    STEVEN JAY ROZAN, *pro hac vice*
        Steven Jay Rozan and Associates
        5051 Westminster, Suite 725
        Houston, Texas 77056
        Attorney for Petitioner

    ROSLYNN R. MAUSKOPF
        United States Attorney
        Eastern District of New York
        Attorney for Respondent
    By:   Laura D. Mantell
        Assistant U.S. Attorney

JOHN GLEESON, United States District Judge:

        Shlomo Yashar brought this action, pursuant to Federal Rule of Criminal Procedure 41(g) and the Due Process Clause of the Fifth Amendment to the Constitution of the Untied States, seeking to recover $730,000 that was seized and acquired through administrative forfeiture proceedings by the United States in the breakup of a drug-distribution conspiracy of which Yashar has pleaded guilty to being a party. Yashar claims he was entitled to, but did not receive, notice of the forfeiture proceedings. The United States now moves to dismiss or, in the alternative, for summary judgment. Because Yashar has not produced any admissible evidence

to prove he has a legal interest in the money seized, I grant summary judgment for the United States.

## BACKGROUND

Between January and May 2000 Yashar was the lessee of a warehouse at 236 Greenpoint Avenue in Brooklyn, New York, where he operated Golden Touch Manufacturers. For a fee, Yashar allowed an organization engaged in the distribution of cocaine and in money laundering to use the warehouse, and Yashar knowingly assisted in those illegal activities from time to time, helping to repackage boxes of cocaine and loading the cocaine into vans for distribution. Agents of the El Dorado Task Force, made up of federal and state law enforcement officers, learned of the drug operation through a cooperating witness. On May 1, 2000, they raided the warehouse, arresting several members of the conspiracy. Yashar was not present at the time of the raid, and shortly thereafter he left the country. While he was gone, the government prosecuted the other members of the drug conspiracy and forfeited significant sums of cash through administrative proceedings.

Yashar claims that $730,000 was seized from the warehouse during the May 1 raid, and that as the lessee of the warehouse, he was entitled to notice of the forfeiture proceedings by which the government acquired the money. In support, Yashar offers affidavits from two journalists, Al Guart and William Rashbaum, who authorized published newspaper articles about the raid of the warehouse, stating that federal agents involved in the raid told them, respectively, that (1) "$730,000 in cash had been seized and that the raid was at a Brooklyn warehouse," and (2) "$730,000 in cash had been seized at an old textile warehouse ... in Brooklyn."

The government maintains that none of the cash it acquired in connection with breaking up the drug conspiracy was seized from the warehouse. Rather, according to the declaration of Special Agent John R. Kane:

> During the course of the investigation and prior to ... May 1, 2000 ... agents seized cash from members of the organization other than Yashar. The first seizure of cash occurred on or about April 5, 2000, when approximately $581,150 in U.S. Currency was seized from Monica Vellila-Almazan. I and another ... agent found the cash during our search of Vellila-Almazan's residence in Whitestone, New York, which was conducted with Vellila-Almazan's consent .... Vellila-Almazan was arrested on April 6, 2000 and later convicted for her involvement in the organization's distribution of cocaine. Between the time of her arrest and the arrests of the other co-conspirators [Jose Peralta and Julian Morales] on May 1, 2000, Vellila-Almazan cooperated with [federal] agents in their investigation. On May 1, 2000, [federal] agents seized another approximately $6,500 in U.S. currency that Vellila-Almazan received from Peralta on April 10, 2000. Also on May 1, 2000, [federal] agents seized $139,950 in U.S. Currency that Vellila-Almazan received from Morales on April 20, 2000.

The government and Yashar agree all of the money seized was acquired by the Government through administrative forfeiture proceedings before December 15, 2000, when Yashar was arrested while trying to enter Canada from China. The government made no attempt to notify Yashar of the forfeiture proceedings while he was out of the country.

DISCUSSION

Although Yashar's original motion, which he filed *pro se*, was styled as a "motion for return of property under Federal Rule[] of Criminal Procedure 41(g)," Yashar has now retained counsel, who has distilled Yashar's claim to a due process challenge to the government's failure to notify Yashar of the forfeiture proceedings concerning the $730,000 Yashar contends was taken from a safe at the warehouse on May 1, 2000.

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is

entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law governing the case identifies the facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.*

Moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted); *see also, e.g.*, *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000) ("[W]e ... view [the facts] in the light most favorable to, and draw inferences in favor of, the non-moving party ...." (internal quotation marks omitted)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586-87 (quoting Fed. R. Civ. P. 56(e)).

The government argues, and I agree, that the two affidavits from Guart and Rashbaum concerning what federal agents told them about the raid are inadmissible hearsay. Although one could make the argument -- Yashar has not -- that the statements referenced by Guart and Rashbaum from "law enforcement officials associated with th[e] case" are admissible under Federal Rule of Evidence 801(d)(2) as admissions by a party-opponent, I would not admit

4

them at trial on that basis. The affidavits do not name specific officers, and both reporters state that they have no notes from the stories to refresh their recollection.[1] There is thus no way of knowing whether those officers were employed by the defendant or whether the officers were either "authorized by the party to make a statement concerning the subject" or were making the statements "within the scope of the[ir] ... employment." Fed. R. Evid. 801(d)(2)(C) & (D). Moreover, the statements themselves "are not alone sufficient to establish the declarant's authority under subdivision (C) [or] the ... employment relationship and the scope thereof under subdivision (D) ...." *Id*.

Because those affidavits are the only evidence Yashar has produced in opposition to the government's motion for summary judgment, Yashar has failed to create a genuine issue of fact as to an essential element of his case, namely, that he had any legal interest in the money seized. Yashar's claim that he was entitled to notice of the forfeiture proceedings is predicated entirely upon his claim that the money was seized from the warehouse of which he was the lessee. Although Yashar admittedly was not present during the May 1, 2000 raid on the warehouse, he might have survived summary judgment merely by submitting an affidavit stating that on the day of the raid, he was keeping $730,000 of his own money, in cash, at the warehouse, and that when he returned, the money was gone. Yet such an affidavit is conspicuously absent from the record. The government has come forward with admissible evidence that no money was seized from the warehouse, and Yashar has not produced any

---

[1] I note that only Rashbaum's affidavit, if admissible, would be inconsistent with the agents' declarations that no money was seized at the warehouse. Guart's affidavit merely says that "law enforcement officials associated with this case [told] me that $730,000 in cash had been seized and that the raid was at a Brooklyn warehouse at 236 Greenpoint Avenue." Guart's statement thus does not say where the cash was seized.

admissible evidence to put that issue in genuine dispute.

CONCLUSION

The government's motion for summary judgment is granted. The Clerk is respectfully directed to enter judgment accordingly and to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 21, 2006
      Brooklyn, New York